case this morning which is in Ray Navistar MaxForce engines appeal of draft and S&C trucks. All right Mr. Rarick you may proceed. Thank you. Good morning may it please the court my name is Owen Rarick I represent the appellants Drask Inc and S&C trucks. I'll refer to them as Drask throughout. They are a small family business in Sugar Creek Ohio that transports perishable goods along the East Coast. They purchased 11 of Navistar's trucks with the untested and dangerously defective engines and that persistently left these trucks broken down stranding the drivers as well as the perishable goods. So about six years ago Drask filed an independent lawsuit in Ohio and since that time they've exchanged millions of pages of discovery with Navistar, taken 20-plus depositions, had experts and they were in the home stretch towards their trial in the Ohio case when they were told that their claims have been picked up and forced into a class action in the northern district of Illinois that it wanted no part of. In this appeal we're requesting that this court reverse the district courts order that denied Drask request for exclusion from the Navistar class action. I'd like to provide a quick road map of where I'd like to talk about today in this argument and with any road map there are exit ramps. Each exit ramp I'd like to talk about today leads to reversal of the district courts decision. The first exit ramp that I would like to talk about is the reasonable indication standard. If that standard applies... Before you get too much into this about your position, which is that this record seems to show that as early as July of 2019, well before the opt-out deadline, you were all aware of this 135 million, down to the number, the 135 million settlement being proposed in the class action and I find it astonishing actually that you wouldn't at least check the docket on the class action prophylactically opt-out since you clearly want your own litigation in Ohio court and it makes me worry that your reason for not doing that might have been this one-way intervention concern that the district court articulates. So why shouldn't you be held to the notice, the actual notice that you had of the of the class action proceedings? Thank you, Your Honor. Well, first of all, we did not have notice. What we did have is a reference in a newspaper article to a class action settlement. But that is not, I mean that's enough for you to say, oh there's a class action someplace. It's in the MDL. These aren't that hard to track down and you would have electronic access to the some of that we sent notice to Navistar's counsel who we've been dealing with on a weekly basis for five plus years at that point and we told them hey we see a reference to the class action settlement. We don't want any part of that. If you want to settle with our client, you need to pay eleven and a half times what the largest amount we could get under that class action settlement. But if you didn't want any part of it, why? I mean you know how class actions work. This is a 23b3 class action. The way not to be a part of it is to opt out. Not to send some counteroffer to somebody else or to continue litigating and hope that it'll all go away. You've got to tell the court who's in, who's out. Well, Your Honor, to your question about the one-way intervention, and that's how the district court rejected our motion. The one-way intervention, you just, I don't see it applying here, Your Honor. Unlike the Sanders case, we did not have a jury trial, jury, or a trial decision on the merits of this case. There was no summary judgment vote granted. There was no motion for summary judgment even pending. So this is not a case where DRASC is sitting on the fence making some calculated wait-and-see approach to consider whether to join the class action or not. The class action in the MDL, I think 12 or 14 class action lawsuits were consolidated in the MDL six years ago. In six years time, the court never certified the class. In that six years time, we were pursuing our case, Your Honor. So that's not so unusual. I mean very often, you know this, with settlement classes there'll be a lot of preliminary work that goes on, discovery and the like, sharpening of claims, and then then there's a settlement. Not that many class actions go to trial, and the settlement class is all sort of part of the process of resolving the case, which is why Rule 23 now has quite a few subsections directed at the fairness of that, giving people another opportunity to opt out even after, if there had never been a certification. There's a lot of protection, and the court reviews these things. So I guess I'm really concerned that that you didn't follow up on something that you knew was happening and let the court know that you were excluding your client. I understand that, Your Honor. Who we did let know, though, is we've been dealing for the last five years. We let Navistar know that. In response, Navistar continued to litigate with us. We would send discovery requests asking for information about other lawsuits, including the class action, asking for information about other settlements, including the class action. We were told time and time again, that's irrelevant. That's irrelevant to your claims that you're pursuing in the Ohio court. But all that being said, though, Your Honor, in Navistar, once they got the information, they had a seat at the table with the district court. We didn't. We're not a party in the case. Navistar did. Why didn't Navistar tell the third-party administrator or this district court? Because Navistar wants you in. I mean, that's the whole point of these class settlements. It would have been against interest, I think. Well, Your Honor, I do believe there's still an officer of the court, and when they have they have an obligation to inform the third-party administrator when they get information such as this. But all that being said, Your Honor, even if it's determined that we should have done more, we should have ignored the references by Navistar that this was all irrelevant. We should have ignored the fact that we didn't get notice, but we did send a rejection of the class settlement and a counter-offer. Even if we get beyond all that, what we'd say, Your Honor, is it's still just excusable neglect. It's excusable neglect. This is not a case that we were a party to. We were not getting electronic notices. We did not we did not ignore any civil rule deadline. What about the notices sent to your corporate address? Weren't there a couple of regular Postal Service notices you received? Well, purportedly, Your Honor, our client sent a declaration, a final declaration, saying he said he never recalls receiving any such notice, and he checked the records and never saw the notice. Judge Easterberg, the invisible Judge Easterberg. The district court considered that and found, as a matter of fact, that the notice was defective, that indeed your client got it. And so immediately, I looked to see an argument on your behalf that that finding was clearly erroneous. But you're not making that argument, as I understand it. You're just asserting the opposite. Is there any reason, basis for a conclusion that the district court's finding is clearly erroneous? Yes, Your Honor. It's clearly erroneous on that issue because we can't prove a negative. My client can only say he did not recall receiving it, and there's no record of receiving it. But I hope I hope you see the problem. Anybody can say, Well, I don't recall X or I didn't make a record of X. But that's perfectly consistent with X being true, right? That's one reason why we need a district judge to resolve questions of fact. And there was a finding of fact. If I recall, there was also a finding of fact that your client was invited to submit email addresses and failed to do so. Do you think that's clearly erroneous? I don't believe that's the actual finding. What the district court said was in the order preliminary approving the settlement is that all parties, in addition to the U. S. Mail notice, should receive email notice to the extent that email notice was was available with Navistar's Navistar's reasonable cooperation. Navistar said, Well, we didn't give. We don't provide drastic email notice to the third party administrator because it wasn't in our marketing database. Well, the district court never said they only had to look at their marketing database. We know that Navistar had drastic email address, but they've been in litigation together for five years. The first page of the document production and discovery shows that Navistar had drastic email addresses. But the district court, um, was flexible and excused Navistar's failure to provide drastic email address to the third party administrator, while at the strictly imposing requirements on dress. Who's an unnamed party to the class action? Your Honor, another legally erroneous decision. I think the district court is the district court did not apply. Pioneer did not cite the pioneer in the analysis of excuse. One neglect did not analyze any of the four fundamental factors of pioneer, and it's telling that Navistar has not done so either in any of their brief, because when we look at the excuse one neglect analysis under pioneer, uh, if any reasonable analysis would lead to the only legal conclusion that this would be excusable neglect. But your Honor, the other point, and I think it's legally erroneous from the district court did not apply the reasonable indication standard. Navistar suggesting that that standard should be rejected by this court. That standard has been around for 50 plus years. It's been cited in right and Miller's treatise. Uh, four seasons 10th Circuit case 46 years ago. This court is cited to the four season vision favorably to the Northern District Illinois cases in the Second Circuit. They've all cited to the reasonable indication standard favorably. And one point I need to make on that is bringing up a straw man's argument. Navistar was raised repeated. Drast is not saying that mere continuation of litigation isn't this efficient, reasonable indication of desire to opt out what we're saying that combined with a counteroffer to the settlement proposal, a counteroffer that we know is considered a rejection of an offer that that is reasonable indication of desire to opt out. It should be determined that the dress effectively opted out. And with that, I think they have less than four minutes left. I'd  Thank you. Thank you. Thank you. Thank you.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning, your honors and counsel. May it please the court. My name is Robin Holshizer. I'm counsel for the Apple. He's the Navistar entities planning to take 12 minutes of time reserving the remaining three minutes for Mr. Lichtman counsel for the Apple. He's class representatives in the MDL before Judge Godshaw. There are key facts that the district court found and then weighed in its ruling and they are not clearly erroneous. Movements Drask and S and C trucks had actual knowledge of the settlement but made no attempt to follow the procedures to opt out and they had a lot of notice. The court approved notice of settlement was sent in two envelopes to two of their valid addresses by United States first-class mail and those envelopes were not returned and the presumption under the law is that they were received and the judge found that they failed to rebut that presumption on top of that the movements themselves admit they heard about the settlement in the trade press that was in June. It was all over the news. You could Google it then and now and you would pull up the settlement website with the long form. And there's more back in June as well movements counsel admits that they had actual knowledge of the hundred and thirty-five million dollar settlement and they knew it involved the same make and trucks at issue in the Ohio action that yet at the same time they took no actions to Opt out and when it went to the district court for relief from the January order the court did not apply some wrong test or some bright line. It reviewed five filings a substantial record that was presented before it and then it followed Burns v. Elrod longtime Seventh Circuit case that instructed when a court considers whether to permit the late filing of claims. It should only permit a late claim when the equities on balance favor the claimants and in its 14 page ruling the district court did just that weighing all of the factors and deny movements motion. Those are the facts and they drove the decision and there was no abuse of discretion. I'd like to consider first the motion as it is a reasonable indication standard the council has talked about the district court did not abuse its discretion in finding that the movements had not effectively opted out by what we consider simply litigating in the Ohio action trading settlement offers Etc. The class action standard is Burns v. Elrod and it's controlling the reasonable indication standard is not the law of the circuit and there's 07 circuit precedent stating that a court must apply considerable flex about flexibility when they're analyzing and deciding whether a class member has opted out when they haven't even tried. But even if the reasonable indication standard applied and it does not the outcome wouldn't have been different here based on the facts as found by the district court didn't just rubber stamp the settlement. She held two preliminary hearings. She drove chat changes to the settlement itself. And then when it came to this motion, she examined the conduct of both Navistar and the movements and the court did express as judge would indicated legitimate concerns about the one-way intervention on the part of movements who made no effort to communicate a desire to opt out to the court movements conduct does not pass the reasonable indication standard even were that the standard. So miss miss Hulshizer the one thing about that strikes me, you know, if the timing were such that they could stay off in the sidelines litigate the Ohio state case see if their projections of a generous outcome there turned out to be true. If they won, you know, take the larger sum of money and if they lost get back into the class action. If that were the scenario, I would really be worried a lot about one-way intervention. There was though a deadline for opting out was there not you couldn't just sort of hang out forever. That would that's just not the way these things work and that deadline would have long since expired by the time the Ohio trial was over. That's that's right. The the opt-out deadline was is before the final approval of the settlement and the trial was not scheduled until 2020 right till later. So there really wasn't much of a risk. They were either getting that they were putting all their eggs in this Ohio basket. And if they had lost they would have gotten zero instead of the amount of the settlement and so be it right well, perhaps I mean the if they depends on how long that took. I mean the Ohio the Ohio litigation have been pending for a number of years. They withdrew their case. They refiled it and the trial was later in the year. There was a date fixed though, right? That there was a date. Yes. Yeah, it was I don't remember the date June of 2020. I think not very long after Navistar wrote and said, oh by the way, you know, there's been final approval of this class action settlement a couple of weeks ago was like January 21st approved in the letters the 7th of February. I think so, it seems to me any dangers of one-way intervention were long over by that time. Well, I don't know your honor. I mean you might you might think that but there were a number of people who did not opt out that had ongoing litigation and they did choose to file a claim all of those people could have came in the back door and and there are some real risks by you know, creating a standard that's more liberal. You know, you've got this situation where you might upset the finality of a complex adjudication. You've got, you know, a potential floodgate if more parties decide. Well, look they got in. Why don't I try to get in now or opt out now depending on you know, what it is the scenario that they want it could it could play some significant, you know, you know judicial resource concerns but more to the fact I mean Navistar paid a substantial amount of settlement here. It was bargaining for finality and certainty and not this continued trickle-through and as the judge also indicated your honor it deprives the court of information not to know who's really opting out at the time. The judge needs to decide am I going to go forward with this settlement? Oh, I mean, that's the most serious problem with what when I hear because the judge doesn't have any idea who's in and who's out unless the court itself is notified of the opt-outs not just some private side deal going on with various parties. That's right. Move-ins do hang their hat on in Ray brand-name prescription drugs and to us that makes no sense because the final settlement ordered there that was issued in that case. There were other claimants that tried to opt out just as drastic as doing and they were denied relief. The only party that was given relief was Randall's food and Randall's food had followed the procedures by opting out on time. It's just that they sent it to the court instead of the address that it was supposed to go to under those procedures move-ins here took zero steps. They received that court-ordered notice and just kept litigating thinking that was enough and in the northern district. It's long been the case that the pendency of an individual action does not excuse a class member from opting out and as the district court did here. They didn't create some new bright line and flexible require another 7th Circuit case Sanders and specifically noted that Sanders provides helpful guidance in weighing the equities guidance. No bright bright line. The court was using it to weigh the equity just as it weighed other equities in the case. The district court also exam at the evidence and found that the settlement administrator and Navistar did not meet. They did meet the obligations set in place relating to the email notice and as rule 20 as this court has that rule 23 does not require defendants to exhaust every conceivable method for identifying party. Now when it comes to the final arguments, I'm going to pass it over to Mr. Lickman. Thank you very much. Please the court. My name is Jason Lickman on behalf of the class plaintiffs. I just like to address two of the issues that are raised in the brief. The first is the scope of the appeal and then the second is the actual substance of the notice that was sent to class members. So turning first to the scope of the appeal. We'd like to begin by stating what is not in dispute before the court right now. The district court held that this was an excellent settlement appellant does not challenge that holding the district court found notice was 224 class members. Appellant challenges only notice as to himself. In other words, there is no dispute that notice was appropriate to 45,000 222 other class members out of an abundance of caution. We just like to stress that the Supreme Court has held that even had appellant tried to raise these issues. He would not have been allowed to present them to this court. The power and this is the Devlin case from the Supreme Court and the quote is the power to appeal is limited to non-named class members who have objected during the fairness hearing. Again, there's no dispute about these issues. I don't understand appellants to be disputing this proposition, but we did just want to begin by making that clear. I'm turning then just very briefly to the substance of the notice. We'd like to stress that the district court was correct in finding the process first, the short-form notice stated unambiguously, you will release your claims against defendants. It was very clear on this point and secondly, the long-form notice went even further and said quote, you cannot continue to sue if you are part of a lawsuit and advised anyone part of a lawsuit to actually speak with their lawyers precisely for this reason and to the extent that appellant is challenging the idea of a summary notice and a long-form notice that has more detail, we would respectfully note that the manual for complex litigation actually recommends this procedure to increase the chances that people pay attention to that first notice and then seek out more information and this is a standard procedure very recently approved by the Ninth Circuit in their en banc high-end opinion. Unless the court has any other questions for me, we have no further argument. Thank you. Mr. Rarick. Thank you, Your Honor. Counsel points to the Burns case indicating that that is Seventh Circuit law on this issue, but the Burns case addressed late filings of claims. It did not deal with opt-outs. The reasonable indication rule, that's the standard that should be applied to opt-outs. In the Burns case, it's notable that the court said even though if you're too late to file a claim to take a piece of the settlement pie, you still have rights. Go pursue your individual litigation because it's better to be left out of a class settlement than to be forced into it, which is why the reasonable indication rule should be the law and that's what's been around for 50 years and this court has cited it favorably. Before we rip away someone's day at work. We've never adopted that standard for determining the sufficiency of an opt-out. It's inadvisable to use it for the reasons that you would mention. We need some certainty. It would set up all kinds of litigation about whether an opt-out is effective or ineffective. Lots of satellite litigation that this class action device is designed to minimize. Okay, Your Honor, I've not seen any circuit court, including this court, reject the reasonable indication standard and in the Sanders case, this case applies to late claims and not opt-outs, but Your Honor, even if this court rejects the reasonable indication standard, what we're left with then is a weighing of the equities and when you weigh the equities in our briefing, I don't have time to cite it all now, but there's a list of 14 equities in our favor. When we look at the equities that are supposedly in Navistar's favor, the one-way intervention application, which we've discussed before, and also this valuable information piece, but in the notices that the court drafted along with class representatives in Navistar, the email notice and the long-haul notice, if you look at them at the bottom, in bold capital letters, it says, do not contact the court. Do not contact the court regarding the notice. In what valuable information actually would this court, the district court, have been missing out on with respect to drafts? 39 members of the 40,000-plus class members opted out. That's 0.087% opted out. Is it suggested by the district court that the class settlement would have been rejected if 40 and 41 class members had opted out? Then we're talking about 0.09%. So this is not the type of valuable information that would have changed the district court's decision. And also, when we look at why didn't the district court have this valuable information, we also have to look at Navistar. As I mentioned before, they were the ones to seat at the table. When they filed their motion for preliminary approval of the settlement, there was no identification from the district court that the draft state was even out there pending. The advisory notes to Rule 23 suggest that at the time the court is considering whether to approve the settlement, it should be aware of all pending and anticipated litigation. The last time Navistar ever referenced the draft litigation was five years before. So the district court wasn't even aware of this Ohio draft litigation, and that's due to Navistar. One last point, Navistar still, even in their argument here today, has not given an analysis under Pioneer that would lead to approval of this case. Once again, we thank the court for its time, and we ask for reversal. Thank you. Thank you very much, and our thanks to all counsels. The case is taken under advice.